**Harvey JOHNPOLL, as Parent and Natural Guardian of Joseph Johnpoll, an infant, Plaintiff,**

v.

**Joseph ELIAS, as Director of the Office of Zoning and Integration of the New York City Board of Education et al., Defendant.**

No. CV 80 2417.

United States District Court, E. D. New York.

Oct. 31, 1980.

MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

The plaintiff in the captioned action is the father of Joseph Johnpoll ("Joseph"), an infant below the age of eighteen (18) years. In his complaint the plaintiff alleges that the defendants, in their capacity as employ-

ees of the New York City Board of Education, have denied to Joseph his constitutional and statutory "rights to a decent education . . ." (Plaintiff's Memo of Law p.1). In this motion, plaintiff seeks a preliminary injunction directing the defendants to permit Joseph to attend either Edward R. Murrow High School ("Murrow") or Midwood High School ("Midwood"), and enjoining the defendants from compelling Joseph to attend John Jay High School ("John Jay").

Joseph, a gifted student of high intelligence (known as an "SP" student), was scheduled to enter the tenth (10th) grade in September, 1980. Last year, at Ditmas Junior High School, Joseph was asked to select the high school he wished to attend the following year. He chose John Jay since the two schools he wished to attend—Murrow or Midwood—were not listed as selections. At that time the plaintiff did not object because he was allegedly told that Joseph as an SP student would likely be assigned to either Murrow or Midwood in the Fall.

When the plaintiff learned of Joseph's assignment to John Jay, he brought suit contending that defendants' failure to consider Joseph's emotional and physical handicap in placing Joseph at John Jay was a denial of due process and violated certain federal statutes which guarantee an appropriate education to handicapped persons. According to the plaintiff, Joseph is emotionally and physically handicapped as a result of severe burns received several years ago. Because of this, Joseph's "emotional development has been so stunted" (Plaintiff's Affidavit, p.2) that compelling Joseph to attend John Jay "with its rampant crime, violence, drugs and social behavior that is sexually and emotionally far more open than Joseph has experienced" (Plaintiff's Affidavit, p.2) would allegedly make it impossible for Joseph to obtain an education as guaranteed by state and federal law. This court must now consider plaintiff's request for a preliminary injunction on the basis of the guidelines established by the Second Circuit.

In order to be granted a preliminary injunction under Rule 65(a) of the Fed.R. Civ.P., the moving party must demonstrate (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *United States v. Bedford Assoc.*, 618 F.2d 904, 912 n.15 (2d Cir. 1980); *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Without initially addressing the irreparable harm issue, the plaintiff's failure to meet either of the latter two prongs mandates a denial of this motion.

*PROBABILITY OF SUCCESS*

Plaintiff bases his complaint on two causes of action: (1) that the defendants' failure to account for Joseph's alleged special needs in assigning Joseph to John Jay "has resulted in a deprivation of plaintiff's rights without due process of law" (Plaintiff's Complaint ¶ 12); and (2) that as a handicapped child, Joseph is entitled to an appropriate education in a proper environment pursuant to 20 U.S.C. §§ 1401 *et seq.*

▆ Despite plaintiff's position that the right to an education is a fundamental right, it is clear that the United States Supreme Court has never accepted this view. *San Antonio Independent School Dist. v. Rodriquez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). However, once a state like New York chooses to provide public education, *New York State Constitution* Article XI, Section 1, the right to an education "must be made available to all on equal terms," *Brown v. Board of Education*, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1953), and this property interest cannot be denied without certain minimum procedures required by the Due Process Clause. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975).

▆ This case does not present a situation which the *Goss* court sought to protect since Joseph has not been denied his right to education. He can receive an education at John Jay. Merely because Joseph is not

being permitted to attend the school of his choice is not tantamount to a denial of a right to an education. The plaintiff's essential objection to Joseph's placement arises from a subjective belief that John Jay would not provide Joseph with as quality an education as Murrow or Midwood. With all due respect to the plaintiff's parental concern, this court cannot be used as a vehicle to review fundamental administrative decisions such as student placement. As the Supreme Court noted in *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968):

> By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.

Since the placement selection involved in this action does not involve "basic constitutional values" *id.* at 104, 89 S.Ct. at 270, the probability of success on the due process cause of action appears slim.

■ Plaintiff's second cause of action is based on the Education of the Handicapped Act, 20 U.S.C. §§ 1401 *et seq.* This Act mandates that every state—like New York—that receives educational assistance from the federal government must have "in effect a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). *See, e. g., Rowley v. Board of Education*, 483 F.Supp. 528 (S.D.N.Y.1980).

It is plaintiff's position that since Joseph is seriously emotionally disturbed and therefore handicapped, it is the duty of the Board of Education to provide him with an "appropriate education." Plaintiff, however, has failed to show to the satisfaction of this court that Joseph is "seriously emotionally disturbed" within the meaning of the statute. 20 U.S.C. § 1401(1); 45 C.F.R. § 121a.5. If Joseph is troubled in any way, it appears that he is only "socially maladjusted" and this problem alone does not render a person handicapped. 45 C.F.R. § 121a.5(b)(8)(ii). Moreover, there is no evidence that Joseph was considered handicapped while at Ditmas Junior High School. Since Joseph does not at this point appear to be handicapped, the Education of the Handicapped Act would not afford plaintiff an avenue of relief and as a result plaintiff's success on the merits of this cause of action does not seem probable.

*EXISTENCE OF SERIOUS QUESTIONS*

In determining whether there are "sufficiently serious questions going to the merits," *United States v. Bedford Assoc.*, 618 F.2d at 912, n.5, this court must ascertain whether the issues raised are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953), *quoted in, Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199, 205 (2d Cir. 1966). *See* Mulligan, *Forward: Preliminary Injunction in the Second Circuit*, 43 Brooklyn L.Rev. 831 (1977).

At this point, the plaintiff has failed to demonstrate to this court that there are serious, substantial, difficult and doubtful issues involved in this action. As noted above, the problem involves merely a mundane administrative decision, the result of which does not deny Joseph an education. If the plaintiff had established that Joseph was handicapped the result might be different. However, as previously explained, plaintiff has failed to make any such showing.

*IRREPARABLE HARM*

■ Even if the plaintiff met either of the two prongs of the merits test, the plaintiff's motion for injunctive relief would nonetheless have to be denied since he has failed to show that a denial of such relief would cause irreparable injury. The potential injury to Joseph is best described as remote and speculative rather than actual and imminent. *Jack Kahn Music v. Baldwin Piano & Organ*, 604 F.2d 755, 759 (2d Cir. 1979). In cases such as this where the potential injury is merely a possibility, any

motion for a preliminary injunction must be denied.

Motion denied.