FILED

04/13/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2017 Session

## TONI JONES v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

Appeal from the Chancery Court for Davidson County
No. 151475III      Ellen H. Lyle, Chancellor

————————————————————

No. M2016-00483-COA-R3-CV

————————————————————

This is an appeal from the grant of Appellee's Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss Appellant's 42 U.S.C. §1983 claim for alleged violation of her substantive and procedural due process rights to a public education. Appellant was removed from her Algebra I class and placed in a computer-based course. Because the right to a public education does not include a particular course placement or teaching method, Appellant's complaint fails to state a claim for relief. Affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

William Gary Blackburn and Bryant Beatty Kroll, Nashville, Tennessee, for the appellant, Toni Jones.

Melissa S. Roberge and Catherine J. Pham, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson Co.

Richard L. Colbert and Nina M. Eiler, Nashville, Tennessee, Amicus Curiae for Tennessee Education Association.

## OPINION

### I. Background

Appellant Toni Jones is a former student of Pearl-Cohn Comprehensive High School, a magnet school operating within the Metropolitan Government of Nashville and Davidson County's ("Metro," or "Appellee") public school system. During the 2013-2014 school year, Ms. Jones was enrolled in Algebra I. While enrolled in Algebra I, Ms. Jones was required to take practice tests known as Discovery Education Assessments, which were administered as a predictor of a student's performance on the final end of course exam. The end of the course exam is used to measure success within the individual Metro public schools. Ms. Jones did poorly on the practice tests and, in the second semester of the 2013-2014 school year, she was moved from the Algebra I class to a "remedial credit recovery program," which was a computer-based course. The following school year, Ms. Jones was placed in a Geometry class, which she failed.

On December 7, 2015, Ms. Jones filed suit against Metro, claiming violation of her procedural and substantive due process rights. Ms. Jones' causes of action are based on the following averments in her complaint:

11. . . . [Ms. Jones] was placed in a remedial "credit recovery" program, and instructed to complete a computer-based "A+ program" without any direct instruction from an actual teacher, thus depriving her of the education she was entitled to receive.

***

15. [Ms. Jones] had a constitutionally protected property interest in her public education, of which she has been deprived in an arbitrary and capricious manner. [Metro's] actions also have unusually harsh consequences because [Ms. Jones] was not promoted to the next grade level and has been deprived of her high school diploma.

16. Without any advance notice and without any opportunity to review [Metro's] decision to retake the practice exam, [Ms. Jones] was pulled from her courses at Pearl-Cohn High School, was not promoted to the next grade level, and was denied the benefit of her constitutionally-protected property interest in a free and appropriate public education.

17. As a direct and proximate result of [Metro's] unconstitutional policies and practices, [Metro] violated [Ms. Jones'] procedural due process right to notice and an opportunity to be heard prior to being deprived of the benefit of her public education.

18. Because [Ms. Jones] was deprived of the benefit of her public education, [Ms. Jones] was also denied a substantive due process right guaranteed by the Fourteenth Amendment of the United States

Constitution.

19. [Metro's] policy of pulling students from class was done to artificially inflate a school's End of Course results, to the detriment of [Ms. Jones'] procedural and substantive due process rights, and [Metro's] actions were therefore arbitrary, capricious, fundamentally unfair, and fail to achieve a legitimate state purpose.

On January 27, 2016, Metro filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss the complaint for failure to state a claim on which relief could be granted. In relevant part, Appellee argued that Ms. Jones' complaint failed to state a claim because a student does not have a constitutional right to be promoted to the next grade level or to receive a particular course placement. On February 8, 2016, Ms. Jones filed a response in opposition to the motion to dismiss. Concurrent with her response, Ms. Jones filed a motion for partial summary judgment.

On February 12, 2016, the trial court heard Metro's motion to dismiss. By order of February 24, 2016, the trial court granted the motion to dismiss, finding, in relevant part, that "the allegations of the complaint do not rise to the level of a constitutional property right. The property interest at stake . . . is the right to a public education, not the right to a particular course-placement, or other aspects of an education that the student believes to be the most appropriate." Ms. Jones appeals.

## II. Issues

Ms. Jones raises two issues as stated in her brief:

1. Whether the right to a teacher is inherently part of a child's right to a free public education under the Tennessee and Federal Constitutions?

2. Whether a complaint that alleges that a child has been arbitrarily removed from a required course which she was passing and denied a teacher fails as a matter of law to state a claim under Rule 12.02(6), Tenn. R. Civ. P.

## III. Standard of Review

The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Trau–Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854

(Tenn. 2010) (quoting ***Freeman Indus., LLC v. Eastman Chem. Co***., 172 S.W.3d 512, 516 (Tenn. 2005)).

In considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." ***Tigg v. Pirelli Tire Corp***., 232 S.W.3d 28, 31-32 (Tenn. 2007) (citing ***Trau–Med***., 71 S.W.3d at 696). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." ***Crews v. Buckman Labs Int'l, Inc***., 78 S.W.3d 852, 857 (Tenn. 2002); *see also* ***Lanier v. Rains***, 229 S.W.3d 656, 660 (Tenn. 2007). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo with no presumption that the trial court's decision was correct. ***Webb v. Nashville Area Habitat for Humanity, Inc.***, 346 S.W.3d 422, 429 (Tenn. 2011).

## IV. Analysis

As set out in full context above, the crux of Ms. Jones' complaint is that she "was not promoted to the next grade level and has been deprived of her high school diploma." Because she "was not promoted to the next grade level," Ms. Jones contends that she "was denied the benefit of her constitutionally-protected property interest in a free and appropriate public education." In other words, Ms. Jones' complaint alleges a deprivation of her right to a public education. However, on appeal, as evidenced by her statement of the issues and her arguments before this Court, Ms. Jones couches her complaint in terms of a deprivation of a property right in being taught by an actual teacher as opposed to a computer based program. In her brief, Ms. Jones relies on the Tennessee Supreme Court's trilogy of opinions in the ***Tennessee Small Sch. Sys. v. McWherter*** case. The ***Small Schools*** case involved disparities arising from funding inequities between rural and urban schools. In ***Tennessee Small Sch. Sys. v. McWherter***, 851 S.W.2d 139 (Tenn. 1993) ("***Small Schools I***"), the defendants argued that the Tennessee Constitution did not guarantee an education that is substantially the same as the education received by children in other counties. The Tennessee Supreme Court disagreed, holding that

> [t]he constitutional mandate that the General Assembly shall provide for a system of free public schools guarantees to all children of school age in the state the opportunity to obtain an education. The provisions of the constitution guaranteeing equal protection of the law to all citizens, require that the educational opportunities provided by the system of free public schools be substantially equal. The constitution, therefore, imposes upon the General Assembly the obligation to maintain and support a system of free public schools that affords substantially equal educational opportunities to all students.

- 4 -

***Small Schools I***, 851 S.W.2d at 140-41. The ***Small Schools*** case returned to the Tennessee Supreme Court on two more occasions due to the Legislature's attempt to satisfy the Court's mandate without consideration of equality in teachers' salaries. In ***Tennessee Small Sch. Sys. v. McWherter***, 894 S.W.2d 734 (Tenn. 1995) ("***Small Schools II***"), the State argued that increasing and equalizing teachers' salaries did not affect student performance and was, therefore, not a component of a student's right to a public education. The Supreme Court disagreed, stating:

> The omission of a requirement for equalizing teachers' salaries is a significant defect in the BEP [i.e., Basic Education Program]. The rationale supporting the inclusion of the other important factors constituting the plan is equally applicable to the inclusion of teachers' salaries. **Teachers, obviously, are the most important component of any education plan or system**, and compensation is, at least, a significant factor determining a teacher's place of employment. The costs of teachers' compensation and benefits is the major item in every education budget. The failure to provide for the equalization of teachers' salaries according to the BEP formula, puts the entire plan at risk functionally and, therefore, legally.

***Small Schools II***, 894 S.W.2d at 738 (emphasis added). Following the Court's holding, in ***Small Schools II***, the State proposed a one-time equalization of teachers' salaries, without including those salaries in the BEP formula. Again, the Tennessee Supreme Court granted permission to appeal. In ***Tennessee Small Sch. Sys. v. McWherter***, 91 S.W.3d 232 (Tenn. 2002) ("***Small Schools III***"), the Court explained:

> We can think of no rational basis, and the defendants have not suggested one, for structuring a basic education program where all of its components, including salaries for custodians, secretaries, nurses, librarians, social workers, principals and their assistants, assessment personnel, coordinators, supervisors, psychologists, and superintendents, are cost-driven, except for the largest and most important component of all, the cost of providing teachers. It seems to us, as we said in Small Schools II, that the rationale for cost determination and annual review of the BEP components applies with equal if not greater force to teachers' salaries, for **it is undeniable that teachers are the most important component of any effective education plan**, and that their salaries, a major item in every education budget, are a significant factor in determining where teachers choose to work. ***Small Schools II,*** 894 S.W.2d at 738. We recognized this fact seven years ago in ***Small Schools II***, and we strongly reiterate it again today. ***Id.***

***Small Schools III***, 91 S.W.3d at 240 (emphasis added). Relying on the emphasized language in ***Small Schools II*** and ***Small Schools III***, Ms. Jones argues, on appeal, that the right to a public education includes a right to an actual teacher.

In the first instance, in reviewing a trial court's decision on a Tennessee Rule of Civil Procedure 12.02(6) motion, we are limited to the averments set out in the complaint and any reasonable inferences to be drawn from those averments. Giving Ms. Jones the benefit of all reasonable inferences, we conclude that her complaint is based squarely on allegations of deprivation of a property right in a public education, not in the individual components that she believes to be most appropriate, i.e., teacher versus computer. Regardless, contrary to Ms. Jones' argument, although the *Small Schools* Court recognized the importance of teachers in education, the *Small Schools* trilogy does not stand for the proposition that the right to a public education must include a classroom teacher. Metro's decision to use computers, with a supervising teacher present in the classroom, as opposed to a class taught, in a traditional sense, by a teacher, is a discretionary decision that directly implicates the type of teaching that is appropriate for the student. Courts will not interfere in the resolution of conflicts that arise in the daily operation of schools, and no property right is triggered when a student is denied the "type" of education that they believe is appropriate for them. As explained by the Sixth Circuit Court of Appeals in *Gallagher v. Pontiac Sch. Dist*, 807 F.2d 75, 78-79 (6th Cir. 1986):

> Plaintiff claims that defendants violated the due process clause by failing to provide him with education commensurate with his needs and by failing to abide by procedural safeguards. To establish a deprivation of an interest protected by the due process clause, plaintiff must show that he was excluded from defendants' programs. Plaintiff cites several cases that have recognized due process rights in an education context, but these cases are distinguishable on the basis that each cited case concerned an exclusion from school. See *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (expulsion); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (temporary expulsion/suspension); *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 222 (1969) (suspension).
>
> Plaintiff contends that he was in effect "excluded" from defendants' programs because he had no communicative skills and sat in the classroom unaware of what was happening. According to plaintiff he was thus "deprived" and "excluded" even though he was allowed to enter the classroom. Plaintiff's use of semantics in this regard, however, does not alter the substance of his claim, which is that he was provided no appropriate education. **Courts have repeatedly rejected the notion that the due process clause secures a right to the most appropriate education**. *See, e.g., O'Connor v. Bd. of Educ. of School Dist. No. 23*, 645 F.2d 578, 582 (7th Cir.), cert. denied, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981); *Johnston v. Ann Arbor Public Schools*, 569 F. Supp.

1502, 1505–06 (E.D.Mich.1983); ***Davis v. Maine Endwell Cent. School Dist***., 542 F. Supp. 1257, 1263; (N.D.N.Y.1982); ***Johnpoll v. Elias***, 513 F. Supp. 430, 431-32 (E.D.N.Y.1980). We adhere to this view; plaintiff is not constitutionally entitled to the most appropriate education that might have assisted him in respect to his severe handicap.

Sound policy reasons support the proposition that the Constitution does not guarantee the most appropriate education.

> The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

***Wood v. Strickland***, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975). *See also* ***Epperson v. Arkansas***, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968) ("Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.").

(Emphasis added). As succinctly discussed by the ***Gallagher*** Court, courts, in various jurisdictions, have specifically limited claims of deprivation and exclusion of a student's right to public education to those cases where the student is suspended or expelled from school, i.e., literally excluded from the classroom. In fact, the Sixth Circuit has held that in-school suspension does not implicate a property interest in a public education because the student is not, in fact, excluded from school. *See* ***Laney v. Farley***, 501 F.3d 577, 581-83 (6th Cir. 2007). As set out in her complaint, Ms. Jones has not averred that she was excluded from the classroom or school; rather, the crux of her argument is that the computer-based classroom was not the most appropriate learning mechanism for her. The ***Gallagher*** Court specifically rejected this argument. The substantive right to a public education does not include the right to a particular course placement or a particular type of teaching mode. *See, e.g.,* ***Goss v. Lopez***, 419 U.S. 565, 579 (1975) ("The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences."); ***Johnpoll v. Elias***, 513 F. Supp. 430, 432 (E.D.N.Y. 1980) ("With all due respect to the plaintiff's parental concern, this court cannot be used as a vehicle to review fundamental administrative decisions such as student placement."). From her complaint, Ms. Jones was not deprived or excluded from a public education; rather, by administrative decision, she was excluded from a particular course. Exclusion from the "type" of education that the student thinks is best is not the purview of the due process clause of the Fourteenth Amendment. There is no property

right in a particular class or teaching mode. Accordingly, the trial court properly dismissed Ms. Jones' complaint for failure to state a claim.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Toni Jones and her surety, for all of which execution may issue if necessary.

 

 

 

_____  
KENNY ARMSTRONG, JUDGE