IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2019 Session

## DEJA VU OF NASHVILLE, INC. v. BRASFIELD & GORRIE, LLC ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 16C2330  Kelvin D. Jones, Judge**

_____

**No. M2018-00610-COA-R3-CV**

_____

After street closures allegedly affected its business, Appellant filed suit against the construction company.  The company answered the complaint denying that any street closures occurred without the permission of Appellee Metropolitan Government of Nashville.  More than a year after the construction company filed its answer, Appellant filed an amended complaint against Appellee, averring nuisance, inverse condemnation, and federal taking.  Appellee moved for dismissal under Tennessee Rule of Civil Procedure 12.02(6) motion, arguing that the one-year statute of limitations barred Appellant's claims.  The trial court found that Appellant was on notice of Appellee's involvement in the road closures based on the construction company's answer and granted the motion to dismiss.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Edward M. Bearman, Memphis, Tennessee, for the appellant, Déjà Vu of Nashville, Inc. d/b/a Déjà Vu.

J. Brooks Fox, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville & Davidson Co..

**OPINION**

**I. Background**

Appellant Déjà Vu of Nashville, Inc. d/b/a Déjà vu ("Déjà Vu") leases property located at 1214 Demonbreun Street in Nashville. In 2015, Brasfield & Gorrie, LLC, a private construction company, began a construction project near Déjà Vu's business. In connection with the Brasfield & Gorrie project, Appellee Metropolitan Government of Nashville & Davidson County ("Metro") issued permits allowing Brasfield & Gorrie to close the public street and sidewalk adjacent to Déjà Vu's business. On August 31, 2016, Déjà Vu filed its initial complaint for private nuisance and money damages against Brasfield & Gorrie. Therein, Déjà Vu alleged, *inter alia*, that its business had been disrupted by the street closures since "at least June 1, 2015." On October 6, 2016, Brasfield & Gorrie filed its answer, wherein it denied liability and further denied "that any street closures occurred without permission of Davidson County Metro government." More than one year later, on October 18, 2017, Déjà Vu moved to amend its complaint to add Metro as a party-defendant. The trial court granted the motion by order of December 1, 2017, and Déjà Vu filed its amended complaint on or about December 13, 2017.

The amended complaint added Metro and asserted claims for nuisance, inverse condemnation, and a federal taking claim. At oral argument before this Court, counsel for Déjà Vu conceded that the trial court correctly dismissed the nuisance claim against Metro.[1] Counsel for Déjà Vu clarified that it was proceeding only on its appeal of the dismissal of the inverse condemnation and taking claims.

After filing its amended complaint, Déjà Vu filed a notice of voluntary dismissal as to Brasfield & Gorrie. On December 27, 2017, the trial court entered an order dismissing Brasfield & Gorrie from the lawsuit.

On January 22, 2018, Metro filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss the amended complaint. Concerning the inverse condemnation and taking claims, Metro asserted that both claims were barred by the applicable one-year statute of limitations. Tenn. Code Ann. § 29-16-124 (stating that in inverse condemnation actions, "[t]he owners of land shall . . . commence proceedings within twelve months after the land has been actually taken possession of . . . .").[2] Specifically, Metro argued that

---

[1] In its March 5, 2018 order, the trial court specifically held that Metro had not waived its immunity, under the Governmental Tort Liability Act, so as be sued in any case arising out of the "issuance . . . of . . . any permit, license, certificate, approval, order, or similar authorization." Tenn. Code Ann. § 29-20-205(3). There are no allegations that Metro issued the permits unlawfully.

[2] The parties do not dispute that the applicable statute of limitations for the contested causes of action is one-year. As discussed *infra* their dispute involves the accrual date under the discovery rule.

[a]ccording to the amended complaint, the road closures that caused harm to [Déjà Vu's] business began in June 2015. Because the amended complaint against Metro was not filed until more than two years later, on December 13, 2017, and because there are no allegations in the amended complaint which would place any particular road closure within the one-year limitations period, such claims are time-barred and should be dismissed.

On February 16, 2018, Déjà Vu filed a response in opposition to Metro's motion to dismiss. Therein, Déjà Vu argued that its amended complaint should relate back to its initial complaint under Tennessee Rule of Civil Procedure 15.03.[3] Concerning Metro's statute of limitations argument, Déjà Vu cited the discovery rule arguing that it "was not possible to discover that Metro was also liable for damages . . ." until it received copies of the permits issued by Metro. According to Déjà Vu's response, it attempted to discover the permits through Metro's website, but the information was not found. In its response in opposition to Metro's motion to dismiss, Déjà Vu asserted that "[a] reasonable layperson should be allowed to rely on Metro's website for obtaining information, especially since it purported to give exactly the information at question here." Déjà Vu contends that it did not discover the existence of the street closure permits until July 25, 2017 when copies of same were tendered by Brasfield & Gorrie as part of its discovery responses. Déjà Vu contends that the one-year statute of limitations

---

[3] In its March 5, 2016 order granting Metro's motion to dismiss, the trial court held that "the claims do not relate back under Rule 15.03 because the terms of that rule (notice and mistaken identity) do not apply here." We agree. Tennessee Rule of Civil Procedure 15.03 states:

> Whenever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party by or against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

As discussed above, Déjà Vu's amended complaint added Metro as a new party and asserted new claims against it. Until the amended complaint was served on Metro, it had no notice of the lawsuit, which was initially filed against Brasfield & Gorrie. Déjà Vu does not assert that there was any mistake concerning Metro's identity. Rather, Déjà Vu argument is that it did not discover the basis of Metro's involvement in the case until it received copies of the permits, on July 25, 2017, from Brasfield & Gorrie's discovery responses. However, for the reasons discussed herein, after Brasfield & Gorrie filed its answer, on October 6, 2016, Déjà Vu was on notice that Metro had some involvement in the street closures. Accordingly, we affirm the trial court's holding that Déjà Vu amended complaint does not relate back to its initial filing.

began to run on July 25, 2017 and that its December 13, 2017 amended complaint against Metro was, therefore, timely. Following a hearing on Metro's motion to dismiss, the trial court disagreed. By order of March 5, 2018, the trial court granted Metro's motion to dismiss finding that Déjà Vu's claims were time-barred. Specifically, the trial court held that:

> According to the allegations in the amended complaint, the road closures began in June 2015. The amended complaint, adding Metro as a party to this lawsuit, was not filed until December 2017. If [Déjà Vu] was indeed unaware, as it claims, in June 2015 which governmental entity was behind the road closures, [Déjà Vu] *was* made aware that Metro was authorizing the closures by the time the co-defendant Brasfiled & Gorrie filed its answer in October 2016. Paragraph 4 of that answer specifically alleges that all road closures had been accomplished with the "permission of Davidson County Metro Government." Because the amended complaint against Metro was not filed until December 2017, it was well outside the one-year limitations period. The discovery rule, as relied on by [Déjà Vu] here, does not operate to make this amended complaint timely.

(Emphasis in original). Déjà Vu appeals.

## II. Issue

The sole issue for review is whether the trial court erred in granting Metro's Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss.

## III. Standard of Review

The resolution of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)).

In considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (citing *Trau-Med.*, 71 S.W.3d at 696). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs Int'l, Inc.*, 78 S.W.3d

852, 857 (Tenn. 2002); *see also* **Lanier v. Rains**, 229 S.W.3d 656, 660 (Tenn. 2007). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo with no presumption that the trial court's decision was correct. **Webb v. Nashville Area Habitat for Humanity, Inc**., 346 S.W.3d 422, 429 (Tenn. 2011).

## IV. Analysis

The resolution of the issue in this case rests on a determination of when Deja Vu's causes of action for inverse condemnation and/or federal taking accrued. Metro contends that the causes of action accrued either in June 2015, when the road closures first occurred, or, by application of the discovery rule, when Brasfield & Gorrie filed its answer on October 6, 2016, wherein it denied "that any street closures occurred without permission of Davidson County Metro Government."[4] Deja Vu maintains that the statute of limitations began to run when it received copies of the permits issued by Metro.

Tennessee recognizes the "discovery rule," the application of which may operate to delay the commencement of the running of the statute of limitations. Under the discovery rule,

> the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial. Such knowledge includes not only an awareness of the injury, but also the tortious origin or wrongful nature of that injury.

**Shadrick v. Coker**, 963 S.W.2d 726, 733-34 (Tenn. 1998) (citations and internal quotations omitted).

Concerning when Déjà Vu was aware of Metro's alleged involvement in the conduct giving rise to its inverse condemnation and federal taking claims, the amended complaint states:

> [Déjà Vu] amends this complaint now that it has discovered the obstruction of its business was due to issued street closure permits by Metro.

***

---

[4] The trial court could consider Brasfield & Gorrie's answer in ruling on Metro's motion to dismiss as both the complaint and answer are considered "pleadings" under Tennessee Rule of Civil Procedure 7.01 ("Rule 7.01: Pleadings. There shall be a complaint and an answer . . . .").

17. Throughout the duration of the construction and road closures, [Déjà Vu], through its employees or agents, obtained a weekly list of the road closures from Defendant Metro or its employees or agents. At no time did Metro reveal that it had authorized road closures for construction that included the relevant portion of Demonbreun provi[di]ng ingress and egress to [Déjà Vu's] premises. Thus, despite their reasonable efforts, [Déjà Vu] w[as] unaware that Defendant Metro had authorized some of the road closures for construction complained of herein.

18. Through discovery in the present action, Defendant Brasfield & Gorrie has provided documents or information purporting to show that Defendant Metro authorized some of the road closures complained of herein. Defendant's provision of such information was the first instance [Déjà Vu] was able to obtain actual knowledge of Defendant Metro's purported authorization of the complained road closures.[5]

Giving all reasonable inference in favor of Déjà Vu, which we must do in reviewing the trial court's ruling on Metro's motion to dismiss, the foregoing averments indicate only that Metro did not reveal that it had authorized the road closures. However, conceding this point, i.e., that Metro did not reveal its involvement in the road closures, Brasfield & Gorrie's answer does reveal Metro's involvement. Brasfield & Gorrie's statement that the street closures did not "occur[] without the permission of Davidson County Metro Government" can only be construed to mean that Metro granted permission for the road closures. Based on Brasfield & Gorrie's statement, at this point in the lawsuit, it was not necessary for Déjà Vu to actually receive the permits in hand in order to be on notice that Metro was somehow involved in the road closures. Based on

---

[5] In its brief, Déjà Vu relies on the Tennessee Supreme Court's opinion in ***Redwing v. Catholic Bishop for the Diocese of Memphis***, 363 S.W.3d 436 (Tenn. 2012). The ***Redwing*** case, however, is distinguishable from the instant appeal. In ***Redwing***, the Court held that the plaintiff averred facts sufficient to show that the defendants engaged in fraudulent concealment so as to extend the running of the statute of limitations under the discovery rule. Specifically, the Court noted that defendant "knew, but covered up, the clergy's sexual abuse of minors and that the Diocese was aware that Fr. Guthrie sexually abused minors and misled Mr. Redwing and his family about its knowledge and involvement the identity of the wrongdoer." ***Id.*** at 466. A claim of fraudulent concealment to toll the running of a statute of limitations contains four elements. The plaintiff invoking the fraudulent concealment doctrine must allege and prove: (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by "'withholding information or making use of some device to mislead' the plaintiff in order to exclude suspicion or prevent inquiry." ***Id***. at 462-63 (citation omitted). Here, Déjà Vu has not pled facts sufficient to support a claim of fraudulent concealment against Metro.

- 6 -

the October 6, 2016 answer, Déjà Vu knew or should have reasonably known that the road closures, which formed the basis of its lawsuit, were accomplished by some action on the part of Metro. Based on this knowledge alone, Déjà Vu was in a position to aver, in a timely filed amended complaint, that Metro had, in some way, permitted the road closures. However, Déjà Vu waited until it had the actual permits in hand before amending its complaint. As such, the complaint was untimely, and the trial court did not err in granting Metro's motion to dismiss same.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order dismissing Appellant's lawsuit. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Déjà Vu of Nashville, Inc. d/b/a Déjà Vu and its surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE